CRÉDITO Y AHORRO PONCEÑO, APPELLANT, *v.* REGISTRAR OF SAN JUAN, RESPONDENT.

## APPEAL from a Decision of the Registrar of Property Refusing to Record a Mortgage.

### No. 506.—Decided March 6, 1922.

RECORD OF TITLE — MORTGAGE — DISTRIBUTION — LIABILITY — SUBSIDIARY MORT-GAGE—CANCELATION.—After having agreed upon the amount for which each of the mortgaged properties should respond in order to secure a certain debt, the parties agreed that each and all of the mortgaged properties should respond for the whole liability of the mortgagor to the mortgagee, and that the lien created on the several properties should not be canceled partially until the whole of the debt and interest thereon had been paid. *Held:* That the contract is not recordable because the said additional agreement is contrary to article 119 of the Mortgage Law, to article 164 of the Mortgage Law Regulations and to the rule laid down by this court in the case of *Ortiz v. Registrar,* 16 P. R. R. 643.

The facts are stated in the opinion.
*Mr. F. Parra Capó* for the appellant.
The respondent appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Luis Antonio Ortiz and his wife, Blanca Guarch, appeared before a notary and created a mortgage in favor of the Cré-dito y Ahorro Ponceño on several properties belonging to them in order to secure a certain debt of Lanza, Rucabado & Company. In conformity with the law the deed specified the amount for which each of the properties was bound, but it was further covenanted as follows:

"I. That each and all of the mortgaged properties described shall

respond for the whole debt of Lanza, Rucabado & Company to the Crédito y Ahorro Ponceño, Incorporated.

"II. That no part of the lien on these properties shall be canceled until the whole of the debt and the interest thereon has been paid."

The document was presented in the Registry of Property of San Juan for record and the registrar refused to record it for the reason that although the specific liability of each property was determined, it was thereafter covenanted as above quoted and that covenant, in his opinion, was contrary to articles 119, 120 and 121 of the Mortgage Law, Article 99 of its Regulations and the rule laid down by this court in *Ortiz* v. *Registrar,* 16 P. R. R. 643.

After carefully considering the facts, the law and the jurisprudence applicable, we entirely agree with the registrar.

Article 119 of the Mortgage Law in force in Porto Rico provides that "when a number of estates shall be mortgaged at the same time for a single credit, the amount or part of the charge to be borne by each shall be specified," and article 164 of the Regulations directs that registrars *shall not record* any mortgage unless the said statute is complied with. In the *Ortiz Case, supra,* this court held that although that requirement was established by the legislators for the benefit of the debtor, it could not be waived by him, at least for the purposes of the registry.

It is alleged that in this case that requirement of the law was complied with. That is true, but it is also true that the compliance was immediately annulled.

In volume 3, at page 262, of his Commentaries Galindo expresses himself as follows:

"Some money-lending establishments usually require two mortgages as security for their loans; one distributing the principal to be secured among all of the mortgaged properties, and another subsidiary mortgage on different properties which respond for the whole

amount in case some of the properties subject to the principal mortgage should deteriorate.

"We consider that this agreement contravenes both the spirit and the correctly interpreted letter of the law. In declaring it an indispensable requisite whose omission prevents the recording of a mortgage that each property shall answer for only a specific amount, the purpose was that the encumbrance should not extend beyond the amount of the loan and to prevent the taking of immoderate advantage by creditors who are not satisfied with good securities and demand other unnecessary security, thereby greatly impairing the general credit of the country. By permitting a subsidiary mortgage the evil results that the properties respond for an amount double that of the loan, inasmuch as they secure the whole principal distributed among them and the same principal jointly by the subsidiary mortgage; and as the subsidiary mortgage on the same properties affected by the principal mortgage would not be recordable because each property would respond for a specific part of the principal and also for the whole principal in case some of the properties became insufficient to secure the payment of the amounts assigned to them, so also a supererogatory security of property, which responds for amounts already secured in the manner permitted by law, is unrecordable."

Morell, citing the preamble of the Mortgage Law, expresses himself as follows:

"In a general sense, the limitation of the liability of each mortgaged property is equal to the valuation given to it in the mortgage. That limitation requires that the mortgaged property shall be perfectly defined and easily identified, and that the extent of the lien imposed upon the property shall be fixed. This is a special application to mortgages of the general rule underlying the requirements for recording real rights.

\* \* \* \* \* \* \*

"But when several properties are mortgaged to secure a single debt the legislators encountered a serious problem. Was the limitation of the mortgage well determined by stating in the record of each property that it together with some others secured the whole amount of the principal debt and, as the case may be, the obligations assumed for interest, costs, etc.? Even if the mortgage was properly limited in such a case, was that form of limitation beneficial to the general credit and sufficient as against third persons?

"In the preamble of the original law this aspect of the question was considered and it was said that according to the former laws, when several properties were mortgaged at the same time to secure one debt, all were subject to a real encumbrance for the whole amount of the debt and the mortgagee's right affected them all equally. The result of this was that the debtor's general credit was often diminished in a much larger proportion than would justify the actual impairment of his wealth and of the securing capacity of his real property after deducting the obligations and encumbrances to which they were subject. It resulted also that the law thus indirectly protected the immoderate demands of money-lenders who, not content with good and sufficient security, without benefit to themselves and to the prejudice of the general credit, multiplied the difficulties of mortgage loans. These inconveniences have been taken care of by the projected law in providing that when several properties may be mortgaged to secure a single debt, the amount or part of the encumbrance for which each must respond shall be determined. In this manner the encumbrance does not cover the whole value of the property, but only a certain amount which may be much less than its actual value, the owner being in a position to create another mortgage on the same property which will not prejudice the senior mortgage to the extent of its amount, but will have preference over other credits and even over the senior mortgage except for the part of the principal secured, for the interest due thereon for the two preceding years and for interest due for the expired portion of the current year." 4 Morell, Mortgage Law, pp. 11 *et seq.*

See also the decision of the General Directorate of Registries of Spain of April 5, 1907, holding that although the parties distribute the liability among the properties, if they afterwards covenant that the properties shall secure all of the expenses and disbursements incurred in the performance of the contract, although the amount may be in excess of the amount specified therefor, they infringe article 119, inasmuch as the mortgage is actually created without the necessary determination or limitation of liability.

The decision appealed from must be

*Affirmed.*

Justices Wolf, Aldrey and Hutchison concurred.